# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RAMON JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 C 8276 |
| | ) | |
| Chicago Police Officers KEVIN M. CONNORS, Star #15151, and ARMANDO CAZARES, Star #8680, | ) ) ) | Chief Judge Ruben Castillo |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ramon Jones brought this cause of action against Chicago Police Officers Kevin M. Connors and Armando Cazares (collectively, "Defendants") for excessive force and failure to intervene in violation of 42 U.S.C. § 1983. (R. 43, Second Am. Compl.) On October 26, 2012, after a four-day trial, the jury returned a verdict in favor of Defendants. (R. 91, Entered Judgment.) Jones now moves for a new trial pursuant to Federal Rule of Civil Procedure 59(a). (R. 95, Pl.'s Mot. New Trial.) For the reasons set forth below, Jones's motion is denied.

## FACTS[1]

Jones filed his suit on November 18, 2011. (R. 1, Compl.) The suit stemmed from events that occurred on December 16, 2009. At approximately 8:30 a.m., Jones was at a gas station at 71st Street and Halsted Street in Chicago, and Defendants got out of their squadrol in the gas station parking lot to question Jones. Jones started to leave the gas station, and Connors began to chase him. During the chase, Connors fell and injured himself. After Connors fell, Cazares took off after Jones. The cause of Connors's fall and what happened next were hotly contested at trial.

---

[1] The Court takes its facts from a rough trial transcript and its own independent recollection of the trial.

Jones testified that Connors fell because he tripped over a curb, or perhaps his own feet. Jones testified that he looked back over his shoulder and saw that someone was chasing him, but he did not know who it was. He testified that he was in a dangerous area and he had money in his pocket, so he ran from whoever was pursuing him. He testified that he ran until he reached the 7000 block of South Peoria Street, where he encountered Cazares. Once Jones heard Cazares identify himself as the police, he stopped, raised his hands, and got on his knees. Jones testified that Cazares tackled him, stomped on his back, and used "super pressure" in tightening handcuffs around his wrists. Shortly thereafter, Connors arrived at the scene. According to Jones, Connors yelled racial slurs at him and stomped on and kicked his face.

Defendants told a very different version of the events of Jones's arrest. They testified that Connors said "stop, police," as he chased Jones, but Jones kept running. Connors testified that Jones heard him identify himself as a police officer, knew he was a police officer, and was purposely running away. He testified that he fell because Jones turned and struck or pushed him in the chest. Cazares testified that he saw Connors fall after Jones stuck his arm towards Connors's chest and thought that Jones had pushed Connors. After Connors fell, Cazares began to chase Jones. Upon encountering Jones at the 7000 block of South Peoria Street, Cazares identified himself as a police officer. He testified that Jones stopped running and turned around but continued to move backwards away from him. According to Cazares, Jones did not get down on his knees when Cazares ordered him to, and Cazares had to pull him to the ground. Jones struggled to get up, despite Cazares's orders to stay still and on the ground, so Cazares put a foot on Jones's back to hold him down while Cazares radioed his location to Connors.

Connors testified that upon receiving Cazares's location and driving to the 7000 block of South Peoria Street, he found Cazares in an altercation with Jones, who was resisting arrest and

attempting to get up. He testified that Cazares had placed his foot in the upper part of Jones's back to keep him from getting up. Connors then placed his knee on Jones's back to gain control of his arms and wrists, and Defendants handcuffed Jones. Defendants testified that they used only such force as was necessary to restrain Jones and prevent him from escaping. According to Defendants' testimony, neither of them used any slurs, nor did they kick or stomp on Jones.

An eyewitnesses, Ibi Cole, lived across the street from where the arrest occurred and observed it from her windows. She testified that she saw Jones lying on the ground submissively when Cazares stomped on his back. She testified that she then called 911 and was on the phone with the dispatcher when Connors arrived and stomped on Jones's face. She screamed in shock, and the recording of her 911 call was played at trial.

In addition, both parties relied extensively on surveillance video recording from the gas station, stills from that recording, photographs Cole and her sister took of the arrest scene, and photographs of Jones at the police station after his arrest.

**ANALYSIS**

Under Rule 59, the Court may grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A new trial should be granted "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the Court's] conscience." *Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir. 1995). Jones argues that a new trial is warranted because the jury's verdict was against the manifest weight of the evidence and because of evidentiary errors at the trial. (R. 95, Pl.'s Mot. New Trial.) The Court addresses each of these arguments in turn.

**I.      Whether the jury's verdict was against the manifest weight of the evidence**

A court can grant a motion for a new trial if it finds that the jury verdict was against the manifest weight of the evidence. *Mejia v. Cook Cnty., Ill.*, 650 F.3d 631, 633 (7th Cir. 2011). In ruling on such a motion, a court "may consider the credibility of witnesses, the weight of the evidence, and anything else which justice requires." *Bob Willow Motors, Inc. v. Gen. Motors Corp.*, 872 F.2d 788, 798 (7th Cir. 1989). "The district court, however, cannot grant a new trial just because it believes the jury got it wrong." *Whitehead v. Bond*, 680 F.3d 919, 928 (7th Cir. 2012). Instead, the district court must afford some deference to the jury's conclusions. *Mejia*, 650 F.3d at 633 n.1. "Jury verdicts deserve particular deference in cases with simple issues but highly disputed facts." *Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 427 (7th Cir. 2008) (quoting *Latino*, 58 F.3d at 314) (internal quotation marks omitted). "A court will set aside a verdict as contrary to the manifest weight of the evidence only if no rational jury could have rendered the verdict." *Whitehead*, 680 F.3d at 928 (internal alterations and citations omitted).

In his cursory argument that the jury's verdict was against the manifest weight of the evidence, Jones asserts that Defendants' "categorical denial of striking and stomping was unequivocally and overwhelmingly contradicted by disinterested eyewitness testimony." (R. 95, Pl.'s Mot. New Trial at 1.) Jones further states that the surveillance video that was introduced into evidence demonstrated that Defendants' version of the events at the gas station was a lie and undermined their credibility. (*Id.* at 1-2.) Finally, Jones contends that "the excited utterance of Ibi Cole captured on a 911 recording should, on its own, be enough to outweigh all the false and self[-]serving testimony offered by the defendants." (*Id.* at 2.) Aside from these conclusory assertions that his evidence was more credible than Defendants' evidence and testimony, Jones

provides no reasons or support for his argument that the verdict was against the manifest weight of the evidence.

Defendants argue that "there was ample evidence from which a jury could conclude that the testimony of Jones and his witness lacked credibility," and that their own testimony was credible. (R. 99, Defs.' Resp. at 2-3.) The Court agrees. Jurors were presented with two compelling accounts of the details of the arrest, and the credibility of each account was called into question by cross-examination and conflicting evidence. Presented with this conflicting evidence, the jurors were essentially charged with making credibility determinations. Independently weighing the evidence presented at trial, the Court finds that the jury had a reasonable basis to believe that Defendants did not use excessive force in arresting Jones. *See Aldridge v. Forest River, Inc.*, 635 F.3d 870, 877 (7th Cir. 2011).

Seeking to avoid this outcome, Jones argues that Defendants' characterization of the burden he must meet to succeed on his motion for a new trial—"no rational jury could have rendered such a verdict"—is contrary to Seventh Circuit case law. (R. 103, Pl.'s Reply at 2.) In *Whitehead v. Bond*, however, the Seventh Circuit affirmed this Court's application of the "no rational jury" standard to a motion for a new trial based on the argument that the jury verdict was against the manifest weight of the evidence. 680 F.3d at 929. The Seventh Circuit explained:

> Since the credibility of witnesses is peculiarly for the jury, it is an invasion of the jury's province to grant a new trial merely because the evidence was sharply in conflict. Even when evidence is contradictory, it's the jury's job—not the district court's job or the job of a panel of appellate judges—to figure out who's telling the truth.

*Id.* at 928 (internal citations, quotation marks, and alterations omitted). Thus, the Seventh Circuit has made it clear that in cases such as this, where resolution of conflicting evidence hinges on credibility determinations, the Court is to defer to the jury in the absence of some other error or injustice.

5

Here, Jones's arguments that the jury's verdict was against the manifest weight of the evidence are all, in essence, arguments that his evidence and witnesses were more credible than Defendants'. Having found that the jury had a rational basis for their verdict, the Court concludes that the verdict was not against the manifest weight of the evidence and declines to grant Jones a new trial on this basis.

## II.     Whether the Court's evidentiary rulings warrant a new trial

Jones also seeks a new trial based on certain evidentiary rulings. (R. 95, Pl.'s Mot. New Trial at 2-4.) A party seeking a new trial based on erroneous evidentiary rulings bears a "heavy burden." *Alverio v. Sam's Warehouse Club*, 253 F.3d 933, 942 (7th Cir. 2001). Even if an evidentiary ruling is erroneous, a new trial is warranted "only if the error had a substantial influence over the jury, and the result reached was inconsistent with substantial justice." *E.E.O.C. v. Mgmt. Hospitality of Racine, Inc.*, 666 F.3d 422, 440 (7th Cir. 2012) (quoting *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 564 (7th Cir. 2006)). The first evidentiary ruling Jones contests pertains to the deposition of Dr. Kurian, the emergency room physician who treated Jones after he was arrested. Jones argues that a new trial is warranted because the use of Dr. Kurian's deposition as evidence was prejudicial and because the Court excluded certain testimony from Dr. Kurian's deposition. (R. 95, Pl.'s Mot. New Trial at 2-4.) In addition, Jones argues that a new trial is warranted because the Court erred when it excluded certain evidence from a Complaint Register ("CR") against Connors. (*Id.* at 4.)

### A. The use of Dr. Kurian's deposition as evidence

Jones first argues that the use of Dr. Kurian's deposition was prejudicial, especially in light of the Seventh Circuit's "strong preference for a witness's live testimony," because Defendants failed to demonstrate due diligence to secure Dr. Kurian's personal appearance at trial. (R. 95, Pl.'s Mot. New Trial at 2) (citing *Griman v. Makorsky*, 76 F.3d 151, 153-54 (7th Cir. 1996)). This argument lacks merit. Defendants served Dr. Kurian with a subpoena to appear at trial two weeks in advance. (R. 99-2, Ex. B, Subpoena.) Dr. Kurian did not respond to the subpoena and, when contacted, said he was unavailable during the trial because of his work obligations. It had previously taken Defendants months to take Dr. Kurian's deposition because he kept rescheduling due to work obligations. Accordingly, the Court determined that Dr. Kurian was an unavailable witness pursuant to Federal Rule of Civil Procedure 32(a)(4) and allowed Defendants to use his deposition at trial. Despite Jones's assertions to the contrary, the Court did not find that Dr. Kurian's busy schedule was an "exceptional circumstance" within the meaning of Rule 32(a)(4)(E). Rather, "the party offering the deposition could not procure the witness's attendance by subpoena." Fed. R. Civ. P. 32(a)(4)(D). The Court finds that Defendants "used reasonable diligence to get [Dr. Kurian] to attend," but Dr. Kurian was simply unavailable. *See Griman*, 76 F.3d at 154. Thus, the Court does not find the use of Dr. Kurian's deposition in lieu of live testimony to be erroneous.

Jones further argues that he was prejudiced by Defendants' objection to, and the Court's exclusion of, testimony Defendants elicited in their deposition of Dr. Kurian. (R. 95, Pl.'s Mot. New Trial at 3.) Specifically, the Court excluded the following segment of Dr. Kurian's deposition:

> Q: Based on your treatment of Mr. Jones, are his injuries consistent with being stomped on and kicked multiple times in the head, face and torso?
>
> A: Yeah, are consistent.

(R. 99-3, Ex. C, Excerpt Kurian Dep. at 43:16-20.) Jones made the same argument at trial, and the Court ruled to exclude the testimony in question pursuant to Federal Rules of Evidence 702 and 403. The Court ruled that, as an emergency room physician who treated Jones for approximately ten minutes, Dr. Kurian was not qualified to testify as to the cause of Jones's injuries. The Court held that the jury could hear Dr. Kurian's testimony about his treatment of Jones's injuries and determine for themselves whether such treatment was consistent with the injuries Jones alleged.

Jones contends that he was "on notice" that the testimony in question would be brought out at trial and was therefore prejudiced by the Court's "exclusion of the only testimony in Dr. Kurian's deposition corroborating plaintiff's account." (R. 95, Pl.'s Mot. New Trial at 3-4.) The Seventh Circuit has held that treating physicians who did not consider the cause of injury during the course of providing treatment may opine on medical causation only if they are disclosed and qualified as experts. *Meyers v. Nat'l R.R. Passenger Corp.*, 619 F.3d 729, 734-35 (7th Cir. 2010); *see also O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 n.14 (7th Cir. 1994) ("[W]e do not distinguish the treating physician from other experts when the treating physician is offering expert testimony regarding causation."). Jones fails to cite any law to the contrary.[2] Thus, Jones should not have considered himself on notice that Dr. Kurian's expert testimony would be allowed at trial because he did not receive the appropriate Federal Rule of

---

[2] Jones cites two cases to support his argument that doctors may be allowed to testify as to causation of injuries. In both of those cases, however, the doctors who were to testify about medical causation had been disclosed as experts. *See Ortiz v. City of Chi.*, 656 F.3d 523, 536 (7th Cir. 2011); *Dupree ex rel. Estate of Hunter v. Cnty. of Cook*, 677 N.E.2d 1303, 1309 (Ill. App. Ct. 1st Dist. 1997).

Civil Procedure 26(a)(2) disclosures of an expert witness. *See Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004) ("even treating physicians and treating nurses must be designated as experts if they are to provide expert testimony").

Jones argues that Federal Rule of Civil Procedure 32(a)(6) requires that he be allowed to introduce the controversial portion of Dr. Kurian's deposition. (R. 103, Pl.'s Reply at 3.) Rule 32(a)(6) provides that "[i]f a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered." Fed. R. Civ. P. 32(a)(6). Jones overlooks the condition that a deposition may be used "to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying." Fed. R. Civ. P. 32(a)(1)(B). Dr. Kurian would not have been allowed to testify on the cause of Jones's injuries had he been present at trial because, as discussed above, he had not been disclosed and qualified as an expert. The Court thus finds that its exclusion of Dr. Kurian's deposition testimony about the cause of Jones's injuries was not erroneous, and the use of Dr. Kurian's deposition does not provide grounds to support granting Jones's motion for a new trial.

**B.     The exclusion of evidence from the Complaint Register against Connors**

Finally, Jones argues that evidence he sought to introduce to prove Connors's improper motive in stopping Jones was admissible under Federal Rule of Evidence 404(b). (R. 95, Pl.'s Mot. New Trial at 4.) Jones sought to admit is part of a CR against Connors relating to an August 2008 vehicular collision in which Connors was cited for driving under the influence of alcohol. According to an investigator's summary of his interview with the victim of the collision, the victim alleged that Connors offered to pay him $80 in cash for the damage to his car and threatened him and his family. (R. 99, Defs.' Resp. at 17.) At trial, the Court ruled that the CR was unduly prejudicial and that the potential for prejudice outweighed any probative

value the CR might have. The Court directed the Clerk of the Court to file the proposed evidence under seal. (*See* R. 87, Sealed Docs.) Concurrently with his motion for a new trial, Jones moved to unseal the relevant documents. (R. 96, Pl.'s Mot. Unseal.) The Court denied the motion to unseal documents on December 4, 2012. (R. 98, Min. Entry.)

Jones cites *United States v. Henson*, 939 F.2d 584, 586 (8th Cir. 1991), to support his argument that "[t]hreats are admissible to prove absence of innocent motive or intent." (R. 103, Pl.'s Reply at 5.) There, in the course of an arson trial concerning the criminal defendant's workplace, the district court admitted into evidence the numerous threats the defendant made in the month prior to the fire "concerning his intention to 'get even with' his employer's security personnel." *Henson*, 939 F.2d at 586. The Eighth Circuit affirmed the district court's ruling, stating that the threats were "relevant to [the defendant's] motive for starting the fire and thus admissible under Rule 404(b)." *Id.* Here, on the other hand, Jones seeks to introduce evidence of a threat Connors allegedly made to a person who had no connection to this suit in an unrelated incident sixteen months prior to Jones's arrest. The Court fails to see the correlation between the incident reported in the CR and whether or not Connors had "an innocent motive or intent in trying to stop and then pursue" Jones. (*See* R. 103, Pl.'s Reply at 5.)

Even if the evidence in the CR was relevant, Rule 403 affords the district court discretion to exclude evidence that would otherwise be admissible if its probative value is substantially outweighed by a potential for unfair prejudice. Fed. R. Evid. 403. "[E]vidence is considered unfairly prejudicial, not merely because it damages the opposing party's case, but also because its admission makes it likely that the jury will be induced to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *Thompson v. City of Chi.*, 472 F.3d 444, 456 (7th Cir. 2006) (quoting *United States v. Connelly*, 874 F.2d 412, 418

10

(7th Cir. 1989)).  The Court finds that the evidence in the CR does not have much probative value in assessing Connors's motive towards Jones and that its admission would have made it more likely that the jury would decide the case on an improper basis.  Thus, the Court finds no error in its exclusion of the evidence in the CR.  Because the Court does not find that the evidentiary rulings pertaining to the CR and to Dr. Kurian's deposition were erroneous, the Court declines to grant a new trial on the basis of an evidentiary error.

## CONCLUSION

For the reasons set forth above, Jones's motion for a new trial (R. 95) is DENIED.

ENTERED: _____

**Chief Judge Ruben Castillo**
**United States District Court**

**Dated: September 26, 2013**